JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:26-cv-01658-DOC-ADS Date: July 13, 2026

Title: Lucy Gaytan v. ESA Management, LLC et al

PRESENT: THE HONORABLE DAVID O. CARTER, JUDGE

| Karlen Dubon | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS): ORDER REMANDING CASE TO STATE COURT SUA SPONTE**

On the Court's own motion, the Court hereby **REMANDS** this case to the Superior Court of California, County of Orange.

## I. Background

This is an employment action. Plaintiff Lucy Gaytan ("Plaintiff") brings this action against Defendants ESA Management, LLC ("ESA") and Does 1-10 (collectively the "Defendants"). *See generally* Complaint ("Compl.") (Dkt. 1-1).

Plaintiff was employed by ESA from January 2024 until August 27, 2025 as a Front Desk Associate and later as an Assistant General Manager. Compl. ¶¶ 1, 13-15. Plaintiff alleges that from July 2024 onwards, she regularly worked overtime hours that she was not fully compensated for. *Id.* ¶ 14. On August 14, 2025, Plaintiff's sister passed away. *Id.* ¶ 17. Later that day, Plaintiff notified her supervisor, Ibeh, who authorized Plaintiff to take time off. *Id.* Plaintiff also notified the District Manager, Miller. *Id.* ¶ 20. On August 17, Plaintiff informed Ibeh that she would be taking bereavement leave the next day. *Id.* ¶ 21. She also submitted a bereavement leave request for September 4 and 5, 2025. *Id.* ¶ 22. On August 21, 2025, Miller discussed guest room inspections with Plaintiff and told Plaintiff to "just be careful" but did not issue a reprimand. *Id.* ¶ 23. On August 22, 2025, Ibeh scheduled Plaintiff to work over the weekend with less than

twenty-four hours' notice. *Id.* ¶ 24. However, on August 24, 2025, Plaintiff was unable to arrange transportation to work and called out, to which Ibeh told Plaintiff she needed to find a way to get to work and informed her that she already had excessive call outs. *Id.* ¶ 26.

Plaintiff's employment with ESA was terminated on August 27, 2025. *Id.* ¶ 28. Ibeh informed Plaintiff over the phone that her termination was due to "excessive absences" and told Plaintiff that she had missed five days of work throughout the year. *Id.* Plaintiff disputed the dates provided and sent Ibeh screenshots of her timecards showing that she was either present or had an approved absence on those dates. *Id.* ¶ 29. Plaintiff texted Miller with the same information. *Id.* ¶ 31. Plaintiff alleges that she did not receive a write-up or warning regarding any absences. *Id.* Plaintiff also alleges she was not disciplined during her tenure at ESA for any attendance-related issues. *Id.* ¶ 16.

On September 1, 2025, Plaintiff received her termination paperwork, which stated that the cause of her termination was alleged falsification of documents from an incident on August 21, 2025. *Id.* ¶ 32. Plaintiff reached out to both Ibeh and Miller regarding the newly provided reason and followed up multiple times over the following days but received no response. *Id.* ¶¶ 34-36. Plaintiff then emailed ESA's Senior Director of HR, Herrera, and filed a complaint against Ibeh and Miller for terminating Plaintiff based on false claims of excessive absences and later providing a different, inaccurate reason. *Id.* ¶ 37. Plaintiff has exhausted her administrative remedies under the Fair Employment and Housing Act ("FEHA"). *Id.* ¶ 38.

Plaintiff alleges the following six causes of action against Defendants ESA and Does 1-10: (1) a violation of Cal. Gov. Code. § 12945.7 as to bereavement leave, (2) a violation of Cal. Gov. Code § 12940(h) *et seq.* for FEHA retaliation, (3) wrongful termination in violation of public policy, (4) unpaid overtime in violation of Cal. Labor Code §§ 510, 1194, 1198, (5) inaccurate wage statements in violation of Cal. Labor Code § 226(a), (6) and waiting time penalties in violation of Cal. Labor Code §§ 200-204. *Id.* ¶¶ 39-133.

Plaintiff originally filed suit in the Superior Court of California, County of Orange, on May 18, 2026. Notice of Removal ("Not.") (Dkt. 1). ESA was served with the Summons and Complaint on May 28, 2026. *Id.* ¶ 6. On June 26, 2026, Defendant removed the action to this Court, asserting diversity jurisdiction. *See generally* Not.

## II. Legal Standard

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Removal of a case from state court to federal court is governed by 28 U.S.C. § 1441, which provides in relevant part that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441. This statute "is strictly construed *against* removal jurisdiction," and the party seeking removal "bears the burden of establishing federal jurisdiction." *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988) (emphasis added) (citations omitted).

Federal diversity jurisdiction requires that the parties be citizens of different states and that the amount in controversy exceed $75,000. 28 U.S.C. § 1332(a). For diversity jurisdiction purposes, a corporation is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The presence of any single plaintiff from the same state as any single defendant destroys "complete diversity" and strips the federal courts of original jurisdiction over the matter. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005).

Generally, a removing defendant must prove by a preponderance of the evidence that the amount in controversy satisfies the jurisdictional threshold. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2008). If the complaint affirmatively alleges an amount in controversy greater than $75,000, the jurisdictional requirement is "presumptively satisfied." *Id.* In that situation, a plaintiff who then tries to defeat removal must prove to a "legal certainty" that a recovery of more than $75,000 is impossible. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *Crum v. Circus Enters.*, 231 F.3d 1129, 1131 (9th Cir. 2000). This framework applies equally to situations where the complaint leaves the amount in controversy unclear or ambiguous. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir. 1992); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403-04 (9th Cir. 1996).

A removing defendant "may not meet [its] burden by simply reciting some 'magical incantation' to the effect that 'the matter in controversy exceeds the sum of [$75,000],' but instead, must set forth in the removal petition the underlying facts supporting its assertion that the amount in controversy exceeds [$75,000]." *Richmond v.*

*Allstate Ins. Co.*, 897 F. Supp. 447, 450 (S.D. Cal. 1995) (quoting *Gaus*, 980 F.2d at 567). If the plaintiff has not clearly or unambiguously alleged $75,000 in its complaint or has affirmatively alleged an amount *less* than $75,000 in its complaint, the burden lies with the defendant to show by a preponderance of the evidence that the jurisdictional minimum is satisfied. *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106-07 (9th Cir. 2010); *Guglielmino*, 506 F.3d at 699.

While the defendant must "set forth the *underlying facts* supporting its assertion that the amount in controversy exceeds the statutory minimum," the standard is not so taxing so as to require the defendant to "research, state, and *prove* the plaintiff's claims for damages." *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) (emphases added). In short, the defendant must show that it is "more likely than not" that the amount in controversy exceeds the statutory minimum. *Id*. Summary judgment-type evidence may be used to substantiate this showing. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090–91 (9th Cir. 2003); *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). For example, defendants may make mathematical calculations using reasonable averages of hourly, monthly, and annual incomes of comparable employees when assessing the amount in controversy in a wrongful termination suit. *Coleman*, 730 F. Supp. 2d. at 1148–49.

If the court lacks subject matter jurisdiction, any action it takes is ultra vires and void. *See Gonzalez v. Crosby*, 545 U.S. 524, 534 (2005); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 101–02 (1998). The lack of subject matter jurisdiction may be raised at any time by either the parties or the court. Fed. R. Civ. P. 12(h)(3). If subject matter jurisdiction is found to be lacking, the court must dismiss the action, *id.*, or remand pursuant to 28 U.S.C. § 1447(c). A court may raise the question of subject matter jurisdiction *sua sponte*. *See Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002).

## III. Discussion

Defendants argue that this Court has diversity jurisdiction in this action. Not. at 1. The Court disagrees.

Defendants have not met their burden to show that the amount in controversy requirement is satisfied. The Court only considers lost wages in the period from termination until removal. *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018) ("the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court *may grant* on that complaint *if the plaintiff is victorious*") (emphasis added). Here, Plaintiff was terminated on August 27,

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**



2025, Compl. ¶ 28, and the case was removed on June 26, 2026, *see generally* Not. At the time of Plaintiff's termination, she was paid $22.29 per hour. *See* Not. ¶ 21. Assuming a 40-hour work week, this is $891.60 per week. *Id.* Accordingly, Plaintiff's past economic damages at the time of removal are approximately $38,338.80.[1] Defendants calculated this amount to be $36,704.20.[2] Regardless, Plaintiff's lost wages do not reach the required $75,000 minimum by either measure.

Additionally, to reach the jurisdictional threshold, Defendants ask the Court to include the following speculative awards and fees. Defendants assert that by the time of trial, Plaintiff's lost wages from additional back pay would amount to $46,363.20 and increase the total lost wages to approximately $83,067.40.[3] Not. ¶ 22. Defendants use a speculative time period of twelve months from removal until trial for calculating this additional back pay. *Id.* Nonetheless, this Court only considers lost wages in the period from termination until removal. Therefore, the Court will not include the speculative additional back pay in the amount in controversy.

Defendants also assert that emotional distress damages, punitive damages, and attorneys' fees could or would likely exceed $75,000.00. Not. ¶¶ 23-29. However, this Court does not include these types of speculative damages or civil penalties when calculating the amount in controversy. *See Traxler*, 596 F.3d at 1011; *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("We hold that where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."). Because Defendants have not satisfied their burden to show that more than $75,000 is at issue in this case, the Court lacks diversity jurisdiction.

The Court's decision not to include speculative awards in the amount in controversy is reinforced by the fact that Congress has not raised the amount in controversy since 1996—nearly three decades ago.[4] *See* The Federal Courts Improvement Act of 1996, 110 Stat. 3850. Since then, the inflation rate is nearly 100% (*i.e.*, prices have almost doubled). Thus, adjusted for inflation, the amount in controversy should be around $150,000. Stated conversely, a case worth $75,000 in 1996 is worth only $37,500 in today's dollars. Because inflation has plainly decreased the "real" value of the amount in

---

[1] $22.29/hour x 40 hours/week x 43 weeks = $38,338.80
[2] To calculate Plaintiff's back pay, Defendants used an annualized salary of $46,363.20 per year, or $3,863.60 per month, with a duration of 9.5 months from termination of Plaintiff until removal of the action. *See* Not. ¶ 21-22.
[3] $3,863.60 x 12 months = $46,363.20; $36,704.20 + $46,363.20 = $83,067.40
[4] For reference, in 1996, the minimum wage was $4.75 per hour, and only 16% of Americans had cell phones. Indeed, the current amount-in-controversy is older than both of my law clerks.

controversy, more and more cases are able to meet the jurisdictional threshold and can be brought in federal court. As federal diversity jurisdiction expands, state court jurisdiction to decide purely state law issues and develop state law correspondingly decreases. Thus, the federal jurisdictional creep is incompatible with the most basic principles of federalism.

Federalism is not the only loser in Congress's failure to increase the amount in controversy. When a case is improperly removed, as happened here, ultimate resolution is delayed. Moreover, if a court does not immediately remand a case sua sponte, a plaintiff may move to remand. Because cases subject to motion to remand are typically small dollar cases, this increased motion work can quickly cause attorneys' fees to outrun any potential recovery and places an immense burden on a plaintiff's lawyer working on contingency. In this respect, the current low jurisdictional threshold reduces access to justice. Therefore, the Court respectfully encourages Congress to reconsider the amount in controversy minimum.

## IV. Disposition

For the reasons set forth above, the Court hereby **REMANDS** this case to the Superior Court of Orange County.

The Clerk shall serve this minute order on the parties.



Initials of Deputy Clerk: kdu